IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Shirley Gregg, | ) | C/A No. 3:08-4040-CMC |
| | ) | |
| Plaintiff, | ) | **OPINION and ORDER** |
| v. | ) | |
| | ) | |
| Jon E. Ham, Quicksilver Bail Bonds, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Plaintiff's post-trial motion for attorney's fees. Defendants have responded in opposition. For the reasons stated below, the court grants in part Plaintiff's motion and awards $20,000.00 in attorney's fees and $2,582.18 in costs.

**A. BACKGROUND**

On December 18, 2008, Defendants joined in the removal of this matter to this court from the Sumter County Court of Common Pleas. Plaintiff alleged in her Complaint that Defendants violated her Fourth Amendment right to be free from an unreasonable search of her residence, and also asserted state law claims for assault, trespass and intentional infliction of emotional distress.[1] Plaintiff sought actual and punitive damages as to all causes of action.[2]

_____

[1]Plaintiff also named Sumter County Sheriff's Department and Senior Deputy Justin Yelton in her Complaint. Plaintiff settled with these Defendants prior to trial.

[2]For the causes of action brought under 42 U.S.C. § 1983, Plaintiff also sought attorney's fees and "expert fees." Compl. at 9-10 (Dkt. # 1-1, filed Dec. 16, 2008).

This matter was tried before a jury. At the close of Plaintiff's case, the court directed a verdict for Defendants on her claim of intentional infliction of emotional distress. The remaining claims were considered by the jury which, after due deliberations, found for Plaintiff on all claims. On February 25, 2010, the Clerk entered judgment in favor of Plaintiff. An appeal is currently pending in this matter.

## B. STANDARD

Congress has authorized the award of a reasonable attorney's fee to prevailing parties in certain civil rights actions. 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."). "[A] plaintiff 'prevails' when actual relief on the merits of [her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Mercer v. Duke Univ.*, 401 F.3d 199, 203 (4th Cir. 2005) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). The district court has the discretion to determine the reasonableness of an attorney fee request. *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983). Nonetheless, "a prevailing [§ 1983] plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* at 429 (internal quotation marks and citation omitted).[3]

---

[3]As the prevailing party, Plaintiff is eligible for, rather than entitled to, an award of attorney's fees. Under the statute, this court must determine what constitutes a reasonable fee, a determination that requires the court to consider the extent of Plaintiff's success. *See Farrar*, 506 U.S. at 114 ("Once civil rights litigation materially alters the legal relationship between the parties, the degree of the plaintiff's overall success goes to the reasonableness of a fee award . . . .") (internal quotation marks omitted)). If the prevailing party has recovered only nominal damages, the Supreme Court has explained that "the only reasonable fee is *usually* no fee at all." *Farrar*, 506 U.S. at 115 (emphasis added); see also *id*. ("In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party . . . .").

In this case, Plaintiff was not only awarded nominal damages, but also was awarded punitive

In addressing a motion for attorney's fees, the "court must first determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Information Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 310 (4th Cir. 2008)). In determining what constitutes a "reasonable" number of hours and billing rates, courts apply the factors adopted in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).[4] *Id*. at 245 (reaffirming use of the *Barber* factors). "[T]here is a 'strong presumption' that the lodestar figure is reasonable." *Perdue v. Kenny A.*, 559 U.S. __, 130 S. Ct. 1662, 1673 (2010). Even with this presumption, "[i]t is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination . . . ." *Id*. at 1676.

When calculating reasonable fees, establishing the hourly rate is generally the critical inquiry. *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (4th Cir. 2010) (citation and quotations omitted)). The fee applicant bears the burden of establishing the reasonableness of the requested rate. *Id*.

In addition to the attorney's own affidavit, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for

---

damages on her § 1983 claim. Plaintiff also prevailed on two state law claims and was awarded damages on those claims, including punitive damages.

[4]The twelve factors from *Barber* are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the expertise, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fee awards in similar cases. 577 F.2d at 226. See discussion, *infra*.

which he seeks an award. Although the determination of a "market rate" in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the court should consider evidence of what attorneys earn for performing similar services in similar circumstances, "which, of course, may include evidence of what the plaintiff's attorney actually charged his client." *Westmoreland Coal Co.*, 602 F.3d at 289. (quoting *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007)). Examples of specific evidence that courts have found "sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id.* (quoting *Robinson*, 560 F.3d at 245).

## C. DISCUSSION

Plaintiff seeks attorney's fees of "not less than" $ 40,000, costs, and an award of expert witness fees in the amount of $2,632.00. Mem. Supp. at 7 (Dkt. #119-1, filed Mar. 8, 2010). Counsel for Plaintiff, William E. Hopkins, Jr. (Hopkins) provides an affidavit in support of the motion, indicating that his normal billing rate is $300 per hour; that the case was taken on a contingency basis with no guarantee of collecting any fee; and that Section 1983 cases are difficult to win, particularly as the "Fourth Circuit Court of Appeals makes the plaintiff's burden heavier in these types of cases." Aff. of William E. Hopkins, Jr., at ¶ 6 (Dkt. #119-5, filed Mar. 8, 2010). Together with his affidavit, Hopkins attached itemized billing records relating to this matter. Dkt. Nos. 119-2, 119-3. In response to this court's Order of July 14, 2010, Hopkins submitted an affidavit of attorney J. Preston Strom, Jr. (Strom), which addressed the *Barber* factors, including the issue of prevailing market rate.

As noted above, Defendants argue in a short reply that an award of $40,000 is unreasonable based upon the relationship of Plaintiff's recovery on her § 1983 claim to her state law claims, urging that "such a result is not permitted under § 1988." Resp. at 2 (Dkt. #129, filed July 12, 2010). Additionally, Defendants argue that if the court is inclined to award attorney's fees, an award of $10,000 is reasonable, as such an award would reflect one-third of the jury's award on the § 1983 claim ($30,001.00).

**1. EVALUATION OF *BARBER* FACTORS**

The court has evaluated all of the *Barber* factors but finds that the factors below warrant discussion here.

*Time and Labor Expended*. Hopkins has submitted a detailed accounting of time that he, co-counsel Paul Fata (Fata), an associate, and a paralegal spent on this case. In reviewing these records, the court finds the time spent reviewing, analyzing, researching, and drafting a response to the motion for summary judgment filed by Defendants Sumter County Sheriff's Department and Senior Deputy Justin Yelton should be excluded. Some of the research and review of the issues involved in these Defendants' summary judgment motion undoubtedly overlapped with and informed issues presented at trial. However, to provide compensation for this time spent responding to a motion filed by Defendants with whom Plaintiff settled would produce a windfall to counsel. Accordingly, the court reduces counsel's requested time by the time for preparation and filing of this motion response.

Hopkins seeks an "upward adjustment" of the actual time expended to reach the requested amount of $40,000. *See* Mem. Supp. at 6 (Dkt. # 119-1, filed Mar. 8, 2010). The court finds, for reasons explained below, that a "downward adjustment" is necessary here.

*Novelty and Difficulty of Questions Raised*.   Plaintiff's counsel does not contend that the issues involved were particularly novel or difficult questions of law.  On the other hand, Plaintiff's counsel was required to research and prepare a response to a court inquiry regarding whether Defendant Ham (a private citizen) could be held liable under § 1983 and certain issues regarding burden of proof which are not ordinarily issues present in prosecution of § 1983 actions.

*Skill Required to Perform Legal Services Rendered*.  Plaintiff's attorney is well-qualified to handle a variety of matters, including gender and age discrimination cases, which provide complex issues regarding burdens of proof.  While a "normal" § 1983 case generally presents less complex issues than gender and age discrimination matters, as noted above, this particular case presented two unusual legal questions.  Therefore, counsel's experience and qualifications were likely contributing factors to a positive result for Plaintiff in this matter.

*Customary Fee for Like Work*.  This factor allows the court to consider "various information, including 'affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent awards by courts in comparable cases; and specific evidence of counsel's actual billing practices or other evidence of actual rates which counsel can command in the market.'" *Trimper v. City of Norfolk*, 846 F. Supp. 1295, 1305 (E.D. Va. 1994) (quoting *Bluffington v. Baltimore County*, 913 F.2d 113, 130 (4th Cir. 1990)); *Liberty Mut. Ins. Co. v. Employee Res. Mgmt., Inc.*, 176 F. Supp. 2d 510, 535 (D.S.C. 2001).

As to customary fee for similar work in the community, it is the fee applicant's burden to "produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Westmoreland Coal Co.*, 602 F.3d at 289 (citations and quotations omitted).  The rates normally charged to clients who pay on a non contingent basis

6

are significant as they suggest the market's determination of at least the fifth (customary fee) and ninth (experience, reputation and ability of counsel) *Barber* factors. *See Trimper*, 58 F.3d at 76 ("the proper measure of fees is the prevailing market rate in the relevant market, and not the rate charged by the actual attorney in question"); *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (noting that relevant market normally is the district in which the court sits).

Plaintiff's counsel submitted his own affidavit indicating that he normally charges clients who pay a per-hour rate $300 per hour. Additionally, Hopkins has provided examples of several cases he has tried to verdict in gender discrimination and certain state law matters. In further support of his motion and at the court's direction, counsel submitted the affidavit of Strom, which indicates that "[w]ith complex civil rights cases of this sort in South Carolina, the community [for similar services] is very limited." Aff. of J. Preston Strom, Jr. at ¶ 22 (Dkt. #133-1, filed Aug. 13, 2010). Strom also indicates that the "hourly rate requested is substantially less than the hourly rate generally charged by civil rights trial attorneys in the southeast." *Id*.

Hopkins' was awarded attorney's fees at the rate of $250 per hour for a gender and age discrimination case in this district in 2002. *See Kinneyman v. Speedway Super America, LLC*, D.S.C. Civil Action No. 4:01-393-TLW; Hopkins Aff. At ¶ 4. Additionally, this court recently approved attorney's fees at the rate of $290 per hour in a Fair Labor Standards Act (FSLA) matter, *Harrison-Belk v. Rockhaven Community Care Home, Inc.*, D.S.C. Civil Action No. 3:07-54-CMC.

Plaintiff's co-counsel, Paul M. Fata (Fata), has not submitted an affidavit in support of the attorney's fee motion, although an itemized copy of the time expended by Fata and the rate he seeks ($200.00 per hour) is attached to the motion. *See* Dkt. #119-3 (filed Mar. 8, 2010).

Based on the support provided, the court concludes that an hourly rate of $300.00 is reasonable for Hopkins, a rate of $200.00 per hour is reasonable for Fata, and that rates of $175.00 and $75.00 per hour are appropriate for Paul B. Deal and Joanna L. Clearly, respectively. Multiplying these rates by the hours expended by each (93.5 hours at $300/hour for Hopkins; 6.97 hours at $200/hour for Fata; 6.2 hours at $175/hour for Deal; and 1.9 hours at $75/hour for Cleary, the requested lodestar amount is $30,671.50.

*Amount in Controversy and Results Obtained*.   In this case, Plaintiff prevailed on three causes of action:  a § 1983 claim for an unreasonable search under the Fourth Amendment; a state law claim for trespass; and a state law claim for assault.  Plaintiff was awarded nominal damages of $1.00 on the § 1983 claim and the state law trespass claim, and $50,000.00 actual damages on the assault claim. The jury awarded punitive damages on each claim ($30,000 on the § 1983 claim and $10,000 on each of the state law claims).

As noted above, Defendants argue that the amount of attorney's fees sought by Plaintiff's counsel "is excessive when viewed in relation to the amount recovered by the Plaintiff on her § 1983 claim."  Resp. in Opp. at  2 (Dkt. #129, filed July 12, 2010).  Additionally, Defendants argue against an award of more than $10,000 in attorney's fees as such would implicate Plaintiff's state law claims, which Defendants argue is not allowed under § 1988.

As noted by the Third Circuit, the court is "surprised to find that the impact of success on state claims as related to the award of fees under § 1988 has . . . been sparsely litigated . . . ." *Jama v. Esmor Correctional Svcs., Inc.*, 577 F.3d 169, 176 (3d Cir. 2009).  In *Jama*, the Third Circuit determined that while "the language of § 1988(b) seems to be sufficiently broad to endorse the inclusion of state claims in the consideration of overall success[,] . . . we do not find precedent on

point that clearly adopts this interpretation as conclusive." *Id*. at 177. "While identity between the claims is not required, the state and federal claims must certainly bear some relation in order for the state claim to be considered under § 1988." *Id*. at 179.

Fourth Circuit cases support the conclusion that the ultimate issue for consideration is whether the success and/or failure of claims arise from a common core of facts, and these facts' relationship to a plaintiff's success on the § 1983 claim. In other words, the test appears to be whether the facts supporting the § 1983 action were so "inextricably intertwined with the facts surrounding" the state law claims, *Abshire v. Walls*, 830 F.2d 1277, 1283 (4th Cir. 1987), that counsel "could not have presented the constitutional aspects of this case without developing and presenting the facts surrounding the entire sequence of events that transpired . . . ." *Id*.

*Goodwin v. Metts*, 973 F.2d 378 (4th Cir. 1992), does not hold to the contrary. In *Goodwin*, the court held that when juries award damages for conduct which not only informs an award under § 1983 but also results in finding for a Plaintiff on a state law cause of action, the "language of section 1988 nowhere indicates that a determination that conduct causing the constitutional deprivation under 42 U.S.C. § 1983 [and] also amounts to tortious misbehavior under state law should affect the court's award of attorneys' fees." 973 F.2d at 378, 386 (4th Cir. 1992).

Plaintiff's success on her § 1983 claim was, to some degree, based on evidence also supporting her assault claim, on which she also prevailed. Plaintiff testified that when Defendant Ham entered her home on October 27, 2007, he carried a shotgun which Plaintiff agreed was aimed at her "if not to shoulder level, [ ] at least . . . raised with the barrel pointing approximately head high or chest high." Tr. of Trial at 43 (Dkt. # 134, filed Sept. 30, 2010). Plaintiff also testified that "I didn't know if he was going to shoot or not. I wasn't going to take no chance of him killing me . . . ." *Id*. at 42.

The jury was instructed that the presence of a weapon does not presumptively establish involuntariness; rather, that the totality of the circumstances should be considered to determine whether Plaintiff's consent to Defendant Ham's entry and search of her home was knowing and voluntary. *See* Jury Instructions at 10-11 (Dkt. # 98, filed Feb. 22, 2010).

The jury weighed the parties' testimony, and found that Defendant Ham entered and searched Plaintiff's home without her free and voluntary consent, thereby violating her Fourth Amendment right. The jury awarded Plaintiff $1.00 in nominal damages on this claim. However, the jury also awarded Plaintiff $30,000 in punitive damages, finding that Defendant Ham's actions were malicious, motivated by evil motive or intent, or involved reckless or callous indifference to Plaintiff's right to be free from an unreasonable search. *See* Verdict at 3 (Dkt. #103, filed Feb. 22, 2010).

The court finds that Plaintiff's success on the § 1983 claim was undoubtedly informed by Plaintiff's evidence of Defendant Ham pointing his shotgun at Plaintiff.[5] Therefore, it is unlikely that Plaintiff's attorney could have "presented the constitutional aspects of this case without developing and presenting the facts surrounding the entire sequence of events that transpired" on the date in question. *Abshire*, *supra*, 830 F.2d at 1283.

On the other hand, Plaintiff's success on her state law trespass claim added little, if anything, to her success on the § 1983 claim.[6] Plaintiff offered evidence of what she contended were two

---

[5]To prove a state law claim of assault, Plaintiff was required to prove by a preponderance of the evidence that the conduct of Defendant Ham placed her in reasonable fear of bodily harm. *See Mellen v. Lane*, 659 S.E.2d 236, 244 (S.C. Ct. App. 2008) (citing *Gathers v. Harris-Teeter Supermarket*, 317 S.E.2d 748, 754-55 (S.C. Ct. App. 1984)).

[6]Under South Carolina law, to prove trespass, Plaintiff was required to prove (by preponderance of the evidence) that Plaintiff had legal possession of the property; that Defendant Ham voluntarily entered onto the property; and that the entry was without Plaintiff's permission.

instances of trespass, one occurring two days before the search, and one several days later. In neither of these instances, however, was Defendant Ham acting under color of state authority, nor can it be said that the presentation of evidence relating to his actions – whether one or two trespasses – was integral to the presentation of the § 1983 search claim.

*Conclusion – Amount Awarded*.  Considering the fact that Plaintiff is eligible for an award of attorney's fees, the lodestar amount ($30,671.50), and the *Barber* factors, the court finds an award of attorney's fees is appropriate in this matter.  Plaintiff was successful on her § 1983 claim which vindicated her Fourth Amendment rights.  Additionally, the court finds that the presentation of Plaintiff's state law assault claim enhanced Plaintiff's evidence relating to the lack of voluntariness of her consent, and, thereby, the jury's finding in Plaintiff's favor.  However, it cannot be said that all of the time counsel expended went to pursuit of Plaintiff's § 1983 claim,  nor can it be said that all of the evidence presented on all claims was inexorably intertwined.  Because Plaintiff was successful on her § 1983 claim and a related assault claim, the court finds that an award of $20,000 in attorney's fees, two-thirds of the amount sought, is appropriate in this matter.

### D.  EXPERT FEES

Plaintiff seeks recovery of expert witness fees in the amount of $2,632.00.  Defendants oppose Plaintiff's request, arguing that the plain language of § 1988(c) precludes this award.  To the extent this court is inclined to award expert fees, Defendants argue that they should be limited by 28 U.S.C. § 1821.

The Fourth Circuit and other courts have held that § 1988 does not provide statutory authority for an award of compensation for experts.  *Davis v. Richmond, Fredericksburg and*

---

*See Hawkins v. City of Greenville*, 594 S.E.2d 557, 565 (S.C. Ct. App. 2004).

*Potomac R.R.*, 803 F.2d 1322 (4th Cir.1986).  Therefore, Plaintiff's motion for recovery of expert witness fees ($2,632.00) is denied.

### E. COSTS

A review of the billing statements attached to Hopkins' affidavit indicates that costs are sought in the amount of $5,902.53 (including $41.95 in costs expended by Fata).  Dkt. # 119-2 at 8 (filed Mar. 8, 2010).  Defendants have filed no opposition to this award of costs.

The itemized listing of costs includes a listing for "outside professional fee" of $3,320.35, with no further explanation provided.  Plaintiff's failure to include some reasonable explanation of this fee results in its disallowance.  Therefore, the court awards costs in the amount of $2,582.18.

### F. CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorney's fees is granted in part and denied in part.  Plaintiff is awarded $20,000 in attorney's fees and costs of $2,582.18.

**IT IS SO ORDERED**.

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
December 6, 2010